**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISON**

**CHAD MEISENHELDER,**

    **Petitioner,**

    **v.**

**WARDEN, LONDON CORRECTIONAL
    INSTITUTION,**

    **Respondent.**

      **CASE NO. 2:13-CV-00005
      JUDGE GRAHAM
      MAGISTRATEJUDGE KEMP**

**REPORT AND RECOMMENDATION**

    Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court pursuant to the Court's own motion to consider the sufficiency of the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

**FACTS and PROCEDURAL HISTORY**

    The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On the evening of February 3, 2001, Robert Wilcox, Cheryl Paxson and brothers Stephen Francis, Jr. and Derek Francis went out to celebrate Derek Francis's twenty-first birthday. Also out on the same evening were appellant, Chad Meisenhelder, his brother-in-laws, Glendl Newlon and Stephen Riffle, and his co-defendant, Brian Eakin. In the early morning hours of February 4, 2001, the two groups encountered each other. A fight ensued between appellant, Mr. Eakin, Mr. Wilcox and the Francis brothers. As a

1

> result, Mr. Wilcox died and the Francis brothers sustained injuries. Consequently, on February 15, 2001, the Licking County Grand Jury indicted appellant on one count of murder in violation of R.C. 2903.02(B) and two counts of attempted felonious assault in violation of R.C. 2903.11(A)(1) and R.C. 2923.02(A). On the morning of trial, appellant requested a continuance in order to investigate a lead. The trial court denied the motion. A jury trial commenced on May 29, 2001. The jury found appellant guilty as charged. By judgment entry filed June 14, 2001, the trial court sentenced appellant to fifteen years on the murder count and four years on each of the attempted felonious assault counts, to be served consecutively.

*State v. Meisenhelder,* No. 01CA00068, 2002 WL 472311, at *1 (Ohio App. 5th Dist. March 18, 2002).  Petitioner filed a timely appeal.  On March 18, 2002, the appellate court denied his appeal.  *Id*.  Petitioner did not timely appeal to the Ohio Supreme Court.  On April 23, 2003, the Ohio Supreme Court denied his motion for a delayed appeal.  *State v. Meisenhelder*, 98 Ohio St.3d 1536 (2003).

On July 14, 2011, Petitioner filed an untimely petition for post conviction relief.  *See State v. Meisenhelder*, No. 11CA0092, 2012 WL 2393772 (Ohio App. 5th Dist. June 22, 2011). In a judgment entry filed August 18, 2011, the trial court denied the petition.  On June 22, 2012, the appellate court affirmed the trial court's dismissal of Petitioner's untimely post conviction petition.  *Id.*  On November 7, 2012, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Meisenhelder,* 133 Ohio St.3d 1464 (2012).

On January 4, 2013, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He raises the following sole ground for habeas corpus relief:

> Petitioner was deprived of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments by counsel's failure to research, prepare and investigate for trial.

2

The primary evidence against Petitioner at trial was the testimony of eyewitness Glendell Newlon whose identification of Petitioner as the person who had struck the blow that knocked the victim down and resulted in the death, was the evidence relied upon by the jury. This witness contacted Petitioner in April, 2011 unsolicited, to state that he has vision issues and had prescription eyeglasses at the time of the incident, which he was not wearing, and which made him uncertain as to his identification. The witness notes that neither the state nor the defense asked him of any degree of certainty or whether he needed glasses or any vision-related issues. Counsel never investigated the witness or asked him any questions about his vision; this the only eyewitness.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

(d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Here, Petitioner's judgment of conviction became final on May 2, 2002, forty-five days after the State appellate court's March 18, 2002, dismissal of his direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. Ohio Supreme Court Rule of Practice 2.2(A)(1)(a); *Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir.2002); *Searcy v. Carter*, 246 F.3d 515, 518–19 (6th Cir.2001). The statute of limitations expired one year later on May 2, 2003. Petitioner waited approximately ten years later, until January 2, 2013, to execute the instant habeas corpus petition. Petitioner's July 14, 2011, untimely petition for post conviction relief did not toll the running of the statute of limitations, because Petitioner filed his post conviction petition long after the statute of limitations had already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir.2003) (The tolling provision of §2244(d) (2) "does not ... 'revive' the limitations period ( *i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run"). Additionally, the state appellate court denied Petitioner's post conviction petition as untimely. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (untimely post conviction petition is not properly filed so as to toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2)).

Petitioner nonetheless contends that equitable tolling of the statute of limitations is appropriate, because he is actually innocent and did not learn or obtain evidence of his actual innocence until April 2011, shortly after which time he pursued post conviction relief in the state trial court. Alternatively, the Court presumes Petitioner contends that this action may be timely

under 28 U.S.C. §2244(d)(1)(D), on the basis that Petitioner contends he did not learn of the factual predicate for his claim until April 2011.  Neither of these arguments are persuasive.

The state appellate court rejected Petitioner's contention that his untimely post conviction should be addressed on the merits because it was based on "newly discovered" evidence in relevant part as follows:

> At the trial in this matter, Glendell Newlon, appellant's brother-in-law, testified that he observed appellant land a "forceful" hit to Wilcox's face, causing Wilcox to fall with his head "wobbling" and to strike his head on the pavement. *Trial Transcript* at 244–245. Appellant, in his Petition for Post Conviction Releif, argued that there was newly discovered evidence that Newlon was not wearing his prescription glasses at the time of the fight. Attached to appellant's petition was Newlon's affidavit. Newlon, in his April 15, 2011, affidavit, stated, in relevant part, as follows:
>
> "I had previously given testimony in the criminal case of State of Ohio v. Chad Meisenhelder, Case Number 01 CR–0058, but I was not asked for all of the facts that I knew and I was not given permission to speak freely, and had I been given permission to do so, I would have testified to the following:
>
> "At trial when I was testifying and during my testimony, Chad's defense lawyer and neither the Prosecutor for the State asked me if I was 100% sure whether it was Chad Meisenhelder or not assaulted Bobby Wilcox the night of February 04th 2001. I wear eye glasses for helping me see, and I that didn't have them on the night of February 04th, 2001. I wear eye glasses for helping me see, and I didn't have them on the night of the assaults against Bobby Wilcox. Had I been asked how sure I was that it was Chad that assaulted Bobby Wilcox, I would have said 'Not 100% sure that it was Chad was assaulted Bobby Wilcox.'
>
> "I was never questioned by either party at trial as to my eyesight and whether or not I had my eye glasses on or not. Had I been asked whether or not I wear eyeglasses, I would have said 'yes.' Had I been asked whether or not I was wearing my eyeglasses the night of 02–04–2001 at the time of the assault on Bobby Wilcox, I would have said 'No.' "

According to appellant, "[t]his was enough to warrant a hearing on this issue, to determine whether counsel was ineffective for not developing and building this testimony about the lack of eye glasses, and that Newlon was not 100% sure that it was [appellant] that hit Wilcox in the face."

Appellant, in support of his contention that such evidence was newly discovered, attached the affidavit of Rachel Newlon. Newlon, in her affidavit, stated that appellant had asked her to interview Glendell Newlon, that Newlon told her that he did not want to talk about the case, and that it was not until March of 2011 that Newlon finally agreed to answer some questions. We question whether such evidence was truly "newly discovered since" Glendell was appellant's brother-in-law and was with appellant just prior to the attack. Appellant clearly would have known if Newlon wore glasses and if he was wearing them on the night in question.

However, assuming, arguendo, that this was newly discovered evidence, we find that appellant has failed to demonstrate that, but for the constitutional error at trial, no reasonable fact finder would have found him guilty. We note that Glendell Newlon testified at trial that "[t]he way the lighting was, I really couldn't tell colors because of the shadow ... It was like silhouette, but I could see the three standing there." By so testifying, Newlon put his identification at issue of appellant as the one who hit Wilcox at issue before the jury. Moreover, as noted by appellee, appellant's liability was as a principal offender or as an accomplice with his co-defendant, Brian Eakin. The testimony established that Wilcox and the Francis brothers were out celebrating Derek Francis's twenty-first birthday. *Trial Transcript* at 141, 213. The three were walking down the street when appellant and Eakin came upon them. *Trial Transcript* at 149, 151, 240–242, 315. There is no dispute that Eakin bet appellant one dollar to beat up the three. *Trial Transcript* at 240–241, 315–317. Appellant admitted this to the police. *Trial Transcript* at 376. Appellant claimed he only watched as Eakin punched Wilcox and repeatedly kicked him in the head. *Trial Transcript* at 377. At the scene, Cheryl Paxson told the police that appellant did attack Wilcox. Trial Transcript at 110–111. Paxson testified that she heard Mr. Eakin and appellant say something to the effect "let's do this." *Trial Transcript* at 159. Moreover, at trial, Stephen Riffle, appellant's brother-in-law, testified that Eakin bet appellant a dollar if appellant would jump the three boys. Riffle testified that appellant asked Eakin "where's the dollar", that Eakin then pulled the dollar out and that appellant then took the dollar, took off running and jumped on the three guys. *Trial Transcript* at 317.

6

> Based on the foregoing, we concur with appellee that the jury could have convicted appellant "based upon his participation in the 'bet' that led to the fatal assault, even if the fatal blow was inflicted by his co-defendant, Brian Eakin."

> We find, therefore, that the trial court did not err in denying appellant's untimely petition without a hearing.

> Appellant's sole assignment of error is, therefore, overruled.

*State v. Meisenhelder,* 2012 WL 2393772, at *2-3.

"[T]he time commences under §2244(d)(1)(D) when the factual predicate for a habeas petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given petitioner." *Webb v. Wolfenbarger*, No. 2:08-12692, 2009 WL 369482, at *3 (E.D. Mich. Feb. 11, 2009)(citing *Redmond v. Jackson*, 295 F. Supp 2d 767, 771 (E.D.Mich.2003). Additionally, the time period under §2244(d)(1) (D) begins to run when a habeas petitioner knows, or through due diligence, could have discovered, the important facts for his claims, not when the petitioner recognizes the facts' legal significance. *Id.* Here, for the reasons discussed by the state appellate court, this Court is not persuaded that Petitioner was unable to discover, through exercise of due diligence, the factual predicate for his claim.

"[P]etitioner bears the ... burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Equitable tolling should be used sparingly. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citations omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560–61.

The Supreme Court has allowed equitable tolling where a claimant actively pursued judicial remedies by filing a timely, but defective pleading, or where he was induced or tricked by his opponent's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Where the claimant failed to exercise due diligence in preserving his legal rights, courts are much less forgiving. *Id.; Jurado v. Burt*, 337 F.3d 638, 642–43 (6th Cir. 2003).

Petitioner filed this habeas corpus petition approximately ten years after the statute of limitations had expired.  Further, as previously discussed, this Court is not persuaded that Petitioner exercised due diligence in learning the factual predicate for his claim.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be dismissed as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties specifically are advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge